UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **Jose Humberto RECINOS** **Luis Enrique SOLANO-Victoriano,** Defendant(s) | Magistrate Case No. '08 MJ 04 64 : 18 <br> COMPLAINT FOR VIOLATION OF: <br> Title 8 U.S.C., Sec: 1324 (a)(1)(A)(ii) Transportation of Illegal Aliens <br> Title 8 U.S.C., Sec. 1324(a)(2)(B)(iii) Bringing in Illegal Aliens Without Presentation. |

The undersigned complainant, being duly sworn, states:

COUNT 1

On or about **February 17, 2008,** within the Southern District of California, defendant **Jose Humberto-RECINOS** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Martin DIAZ-Delgado, Fortunato FLORES-Diaz,** and **Guadalupe JACOBO-Delgado** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

COUNT 2

On or about **February 17, 2008,** within the Southern District of California, defendant **Luis Enrique SOLANO-Victoriano,** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Martin DIAZ-Delgado, Fortunato FLORES-Diaz,** and **Guadalupe JACOBO-Delgado,** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **19th** DAY OF **February 2008**

William McCurine, Jr.
UNITED STATES MAGISTRATE JUDGE

SLF

**CONTINUATION OF COMPLAINT:**
**Jose Humberto RECINOS**
**Luis Enrique SOLANO-Victoriano**

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

Furthermore, the complainant states that **Martin DIAZ-Delgado, Fortunato FLORES-Diaz,** and **Guadalupe JACOBO-Delgado,** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On February 17, 2008, Senior Patrol Agents J. Miranda, L. Rodriguez, T. Englehorn and J. Petras were conducting anti-smuggling duties in Eastern San Diego County as assigned to the San Diego Sector Smuggling Interdiction Group (SIG). All SIG Agents were in plainclothes, and operating an unmarked DHS surveillance/enforcement vehicle with fully functioning emergency lights and audible police siren. Agents were monitoring activities in an area surrounding the town of Boulevard, California. This area is located in a remote mountainous region approximately 50 miles east of San Diego, California and 20 miles east of the Tecate, California Port of Entry. Many areas surrounding this location are well-known alien smuggling load-up, spots. Specifically, SIG Agents had been advised of the possible presence of a group of approximately twenty illegal aliens waiting to load into a vehicle just west of Boulevard on Old Highway 80, between the Interstate 8 exits of Crestwood Road and Ribbonwood Road. At approximately 1:30 a.m., agents set up in concealed locations and observed vehicular traffic coming to and leaving the area.

At approximately 4:00 a.m., Agents Rodriguez and Englehorn observed a maroon Nissan Maxima bearing a and a white Ford Explorer bearing California license plates exit Interstate 8 at the Crestwood exit and proceed eastbound on Old Highway 80. Approximately five minutes later, Agents Petras and Miranda observed both vehicles continue into Boulevard, proceed northbound on Ribbonwood Road and enter I-8 westbound. These two vehicles had essentially just completed a loop between Crestwood Road and Ribbonwood Road on Old Highway 80 and I-8. This is consistent with alien smuggling evolutions whereas scout vehicles travel the intended route ahead of the load vehicle to identify and attempt to engage any Border Patrol vehicles watching the area. SIG Agents had received a previous report of a maroon Nissan Maxima being used as a scout vehicle for large groups of illegal aliens. Within the past two weeks, Agents had interdicted a large group of approximately seventeen illegal aliens in this area after having spotted a maroon Nissan Maxima doing loops here. When the Nissan and the Explorer entered onto I-8, both appeared to be riding level and the two vehicles together did not appear to be capable of carrying a combined total of 20 illegal aliens, so they were not followed.

At approximately 4:15 a.m., Agents Rodriguez and Englehorn observed a white Ford Expedition, a white Chevrolet Silverado, and beige Chevrolet Tahoe traveling apparently in tandem from Interstate 8, eastbound on Old Highway 80. After several minutes, Agents Rodriguez and Englehorn observed the Silverado leading the Tahoe back towards I-8 the way they had come. Not far behind the two Chevrolet vehicles was the Expedition. This is consistent with alien smuggling evolutions, wherein the load vehicle(s) arrive at the designated load-up location, load the group and return to the interstate the way they had come to lessen their exposure in this heavily patrolled area. At this time of morning there is minimal normal vehicular traffic on Old Highway 80. Agents observed that these three vehicles were all capable of carrying a group as large as twenty.

Agents followed the Silverado, Tahoe and Expedition in an effort to further observe and investigate. Over the next three to five minutes, Agents Rodriguez, Englehorn and Harris contacted Border patrol dispatch and requested registered owner information on the Silverado, Tahoe and Expedition referencing their displayed California license plate.

Dispatch soon relayed that none of the vehicles were reported stolen and the California Department of Motor Vehicles records indicated that the Silverado listed a pending master file record out of Los Angeles, California. The Tahoe and the Expedition also listed their registered owners out of Los Angeles, California. The presence of one large-capacity vehicle on these Eastern San Diego County back roads often raise the suspicion of Border Patrol Agents patrolling this area, but the presence of three high-capacity vehicles, all registered out of Los Angeles, and at this time of day traveling in tandem heightened SIG Agents belief that these were in fact alien smuggling vehicles. Agents observed that the Silverado and Tahoe appeared heavily laden, while the Expedition did not.

There were two uniformed Border Patrol Agents dedicated to support SIG operations for this event, Supervisory Border Patrol Agent W. Bove of the Boulevard Station and Border Patrol Agent J. Harris of the Campo Station. Both were operating marked Border Patrol vehicles. As the three suspect vehicles entered I-8 westbound, Agents Bove and Harris were requested to respond. As Agent Harris overshot the Tahoe to fall in behind the Silverado, Agents Miranda and Engelhorn observed that the driver of the Tahoe drastically decreased his speeds, while the Silverado's driver increased his. In preparation for a pursuit, SIG Supervisory Border Patrol Agent M. Hansen positioned himself at the Buckman Springs off ramp with a controlled tire deflation device (CTDD).

Agent Bove activated his emergency lights and siren in an effort to conduct a vehicle stop on the Silverado. The Silverado pulled to the shoulder and three suspects bailed out and ran north into the thick brush. Agent Rodriguez, who backed Agent Bove up on the stop approached the Silverado and observed twelve suspected illegal aliens concealed in the bed. Seating capacity in this Silverado was six; it had contained fifteen, including the three suspects who had absconded. A search for the runners produced negative results.

Agent Harris activated his emergency lights and siren in an effort to conduct a vehicle stop on the Tahoe. The Tahoe pulled to the shoulder without incident. Agents Engelhorn and Miranda were back-up on this stop. They approached and in the front seat they observed one individual, later identified as the defendant **Jose Humberto RECINOS**, behind the wheel, and another individual, later identified as defendant #2 **Luis Enrique SOLANO-Victoriano**, in the passenger seat. One other adult male was also found lying at their feet on the floorboard. In the back seat and rear cargo area were six additional suspected illegal aliens. Seating capacity in this Tahoe was five; it contained nine individuals including the driver. Agents Rodriguez and Petras identified themselves as U.S. Border Patrol Agents to the twelve individuals in the Silverado and questioned them as to their citizenship and immigration status. All twelve admitted to being citizens and nationals of Mexico illegally present in the United States. Agents Rodriguez and Petras placed all twelve under arrest for illegal entry.

Agents Miranda and Englehorn identified themselves as U.S. Border Patrol Agents to the nine individuals in the Tahoe and questioned them as to their citizenship and immigration status. Eight of them, including SOLANO admitted to being citizens and nationals of Mexico illegally present in the United States. RECINOS stated that he was a United States citizen. Agents Miranda and Englehorn placed the eight passengers under arrest for illegal entry and RECINOS under arrest for suspicion of alien smuggling. Based upon SOLANO's positioning within the Tahoe, being the only subject sitting upright and seated in the front passenger seat, Agent Miranda suspected that he was a principle smuggler and he was immediately separated from the rest of the group.

SVF

As this was occurring, the Expedition continued westbound on I-8. No agents were available to attempt a vehicle stop. Agent Hansen, who by this time was retrieving his deployed CTDD, observed the Expedition exit at Buckman Springs Road. Agent Hansen attempted to catch up to the Expedition, but it had pulled into the Buckman Springs rest area before he arrived and was devoid of any occupants when he found it. Agents attempted to obtain observations of it departing the rest area while dealing with the two loaded vehicles, but some time after it had parked, it was able to leave the area without agents seeing it. The checkpoint is before the next exit westbound and they reported that it had not attempted to pass through. Agent Hansen issued a be-on-the-lookout to area checkpoints requesting that if the Expedition were encountered later in the shift, that all occupants be identified. Upon arriving at the scene, Agent Hansen recognized SOLANO from a previous apprehension, which occurred on April 28, 2007. All arrested individuals and the Silverado and Tahoe were transported to the El Cajon Border Patrol Station for processing.

**STATEMENT OF DEFENDANT #1: Jose Humberto RECINO:**

The defendant was read the Miranda rights and was willing to answer questions without an attorney present. RECINOS states that he is a U.S. citizen. RECINOS claims to have a prior criminal record and is on probation for a burglary conviction. RECINOS admits to smuggling illegal aliens into the United States for money. RECINOS said, prior to his arrest, he met a man, he knew only as "Flaco", where his brother works in Los Angeles, California. Flaco told RECINOS he is involved in alien smuggling and asked RECINOS if he was interested in making money smuggling aliens. RECINOS said Flaco came to his residence on the morning of February 16, 2008, and asked RECINOS he wanted to do a job. RECINOS said he agreed to smuggle aliens. RECINOS said Flaco came to his residence that same evening and offered to pay him $1500.00 (US) to smuggle aliens. RECINOS said he agreed. RECINOS said he got into a car with Flaco and they drove for several hours until they arrived at the Viejas Casino in Alpine, California. At this time, Flaco gave him the keys to a gray Chevy Tahoe, parked in the parking lot at the Casino, and told him to follow a white Chevy pick-up truck that was also parked at the Viejas Casino when they arrived.

RECINOS said he followed the white pick-up truck to a remote area in the mountains. RECINOS said they stopped on a side road off of Interstate 8 and he observed several people climb into the white Chevy pick-up truck. RECINOS said the remaining people got into the Tahoe he was driving. RECINOS said he knew the people he was driving were in the United States illegally. RECINOS said he and the white Chevy pick-up truck made a U-turn and drove towards Interstate 8. When they reached the freeway, RECINOS said they drove westbound. After several minutes, RECINOS observed the white Chevy pick-up truck get pulled over by the Border Patrol. RECINOS said he didn't know where he was or what to do, so he kept driving west and pulled over when he saw the emergency lights of the Border Patrol behind him.

**STATEMENT OF DEFENDANT #2: Luis Enrique SOLANO-Victoriano:**

The defendant was read the Miranda rights and was willing to answer questions without an attorney present. SOLANO was apprehended in a tandem load with a group of 21 individuals and was later identified as the foot-guide of the group. During his post Miranda Rights, SOLANO admitted to being a citizen and national of Mexico with no proper immigration documents that would allow him to enter or remain in the United States legally. SOLANO said that he has was deported to Mexico by an Immigration Judge a few years ago after he was apprehended guiding a group of illegal aliens. SOLANO admitted to being one of the foot-guides of the group that he was apprehended with on this occasion. SOLANO said that he assisted the other two foot-guides by erasing foot-prints and by making sure that the group would not separate. SOLANO said that he would be paid $200 US per alien.

**CONTINUATION OF COMPLAINT:**
**Jose Humberto RECINOS**
**Luis Enrique SOLANO-Victoriano**

**MATERIAL WITNESSES STATEMENTS:**

The statements of material witnesses **Martin DIAZ-Delgado, Guadalupe JACOBO-Delgado and Fortunato FLORES-Diaz** agree in summary that they are citizens and nationals of Mexico illegally present in the United States. They stated that they did not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Mexico to be smuggled into the United States for a fee of $1,700.00 (US). The material witnesses stated that they illegally crossed the border with the aid of two alien smugglers/foot guides. The foot guides led them to a predetermined spot where two vehicles were going to pick them up to further their entry into the United States. There final destination was Los Angeles, Fresno and Utah.

**Executed on February 18, 2008, at 9:30 a.m.**

Terri L. Dimolios
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of **4** page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on **February 17, 2008,** in violation of Title **8**, United States Code, Section **1324**.

William McCurine, Jr.
United States Magistrate Judge

2/18/08, 1157hrs
Date/Time